**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARK TORRA,

                              Petitioner,

            - v -                                           Civ. No. 9:04-CV-238
                                                                    (LEK/GHL)

GARY GREENE,

                              Respondent.

**APPEARANCES:**                                  **OF COUNSEL:**

MARK TORRA
Petitioner, *Pro Se*
01-A-0989
Auburn Correctional Facility
P. O. Box 618
Auburn, New York 13021

HON. ANDREW M. CUOMO                        MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondent
The Capitol
Albany, New York 12224

**GEORGE H. LOWE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

    *Pro se* Petitioner Mark Torra was convicted by a Schenectady County Court jury of burglary

in the second degree, assault in the second degree, resisting arrest, criminal mischief, and petit

larceny.  Trial Transcript, dated Jan. 15, 17-18, & 23-24, 2002 ("Trial Tr.") at pp. 846-47.  On

March 25, 2002, Petitioner was sentenced to the following determinate terms: 1) fifteen (15) years

of incarceration on the burglary in the second degree count, 2) seven (7) years of incarceration for

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and
N.D.N.Y.L.R. 72.

the assault in the second degree count and 3) one (1) year of incarceration in the county jail for each count of resisting arrest, criminal mischief, and petit larceny.  Sentencing Tr., dated Mar. 25, 2002, at pp. 11-12.  The sentences on the burglary and assault counts were to run consecutively, with the rest to be served concurrently.  *Id.* at p. 12.  Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: 1) the trial court improperly consolidated his two indictments; 2) he received ineffective assistance of counsel; 3) the trial court erred in its *Sandoval* ruling; and 4) there was insufficient evidence presented at trial to support his conviction of assault in the second degree.  Dkt. No. 1, Pet. at ¶ 12.  For the reasons to follow, it is recommended that the Petition be **DENIED**.

## I.  BACKGROUND

On February 22, 2001, Petitioner was indicted on one count each of burglary in the second degree, criminal mischief in the fourth degree, and petit larceny.  Def.'s Br. and Appendix, Indictment, dated Feb. 22, 2001, at pp. A4-5.  It was alleged that on January 18, 2001, Petitioner entered an apartment, damaged property, and stole money as well as jewelry.  *Id.*  Subsequently, on June 13, 2001, Petitioner was indicted for a second time on one count each of assault in the second degree and resisting arrest for injuring a police officer and attempting to prevent a lawful arrest in connection with the events that occurred on January 18, 2001.  *Id.*, Indictment, dated June 13, 2001 at pp. A6-7 & Edward C. Moynihan Affirmation, dated July 16, 2001, at pp. A9-10.  Thereafter, the prosecution filed a motion, which was opposed, to consolidate the indictments because it was claimed that proof from the second indictment would be material in regards to the first indictment.  *Id.*, Moynihan Affirmation at p. A10.  Said motion was granted by the trial court on August 6, 2001.  *Id.*, Supplemental Decision and Order, dated Aug. 6, 2001, at pp. A14-15.

On January 14, 2002, the trial court held a *Sandoval* Hearing.[2]  Hr'g Tr., dated Jan. 14, 2002.  During the Hearing, the trial court, prosecution, and defense counsel discussed thirty-seven items on Petitioner's criminal history sheet to determine which would be allowed to be introduced at trial should Petitioner choose to testify.  Hr'g Tr. at pp. 11-28.  The court disallowed the use of ten matters because they were either pending, too remote, irrelevant, or too similar to the crimes charged in the pending case.  *Id.* at pp. 28-33.  In regards to the remaining convictions/bad acts, the court stated that the prosecution could make no reference to the sentences received, however, the prosecution could inquire into the factual underpinnings of the charges.  *Id.*

Then, on January 15, 2002, the court held a *Ventimiglia* Hearing prior to jury selection.[3]  *Ventimiglia* Hr'g Tr., dated Jan. 15, 2002.  During this Hearing, the prosecution raised the matter of Petitioner's failure to appear at a sentencing for a charge of driving while intoxicated ("DWI"), which was sought to be used at trial in the prosecution's case-in-chief, as well as other burglaries and crimes that had occurred within a relatively short time period of the one at issue in the pending case.  *Id.* at pp. 3-35.  The defense stated it had no objection to the prosecution arguing that Petitioner's failure to show up for sentencing presented Petitioner with opportunities to commit other crimes.  *Id.* at pp. 31-32.  The court stated it was inclined to allow the prosecution to delve into the other uncharged crimes but stated it would reserve its ruling until trial.  *Id.* at pp. 32 & 35.

---

[2] The purpose of a *Sandoval* hearing is for the court to determine "whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility."  *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. November 9, 2000); *see also People v. Sandoval*, 34 N.Y.2d 371, 374 (1974).

[3] In a *Ventimiglia* hearing, the court determines the admissibility of evidence of prior uncharged crimes as direct evidence.  *See People v. Ventimiglia,* 420 N.E.2d 59 (N.Y. Ct. of App. 1981).  In this case, the *Ventimiglia* Hearing also encompassed *Molineux* rulings by which evidence of uncharged crimes can be admitted "in limited circumstances, when the defendant employs some unique, unusual, or distinctive *modus operandi* . . . that is relevant to proving his identity as the perpetrator of the crime charged."  *People v. Mateo*, 712 N.E.2d 692, 694-95 (N.Y. Ct. of App.1999) (citations omitted) (emphasis in original); *see People v. Molineux*, 61 N.E. 286 (N.Y. Ct. of App. 1901).

The trial commenced later that day with jury selection.  *See* Trial Tr.

The first witness to testify was Gertrude Zelezniak.  *Id.* at pp. 254.  Zelezniak stated that on January 18, 2001, she noticed a strange van outside of her apartment.  *Id.* at pp. 254-56.  She indicated that when she initially observed the van, it was empty.  *Id.* at p. 256.  However, a few minutes later, she saw Petitioner come from her tenant's apartment downstairs and get into the van alone, which made her suspicious enough to take down part of the license plate number.  *Id.* at pp. 256-59.  Zelezniak testified that she ran to her back window and asked Petitioner who he was looking for and he responded that he was seeking a man named Kenny to sign some papers.  *Id.* at pp. 259-60 & 264.  Zelezniak stated she was not familiar with anyone by that name but thought it may be someone with the construction crew working next door.  *Id.* at pp. 260-61 & 264.  She then noted that some time after Petitioner left the scene and Mary Jane Cool, her tenant, came home, Cool had asked her if anyone had been around the apartment because she found her door ajar.  *Id.* at p. 290.

Next, Kenneth Jack testified that on the date of the incident, he had let Petitioner borrow his van.  *Id.* at pp. 330-32.  However, when Petitioner failed to return the same day with the vehicle, he called the police approximately two days later to report that the van was stolen.[4]  *Id.* at pp. 331-34.  Jack noted the license plate number of his missing van, which coincided with the partial number taken down by Zelezniak.  *Id.* at p. 336.  Jack then stated when his vehicle was eventually located, Michael Saglimbeni, whom he did not know very well, was in possession of the van.  *Id.* at pp. 345 & 348-49.

---

[4] Jack testified that he delayed calling the police in hopes that Petitioner would return the van.  Trial Tr. at p. 331

Subsequently, Mary Jane Cool testified that on January 18, 2001, she had left for work and locked the door of her apartment but when she returned at the end of the day, she found that the door had been pried open. *Id.* at pp. 353-56. Cool testified that she called the police after confirming Zelezniak had not been in her apartment and after noticing that some money and jewelry were missing. *Id.* at pp. 357-59.

Thereafter, Alecia Myers testified that on January 24, 2001, someone rang the bell of her apartment asking for a man named Kenny. *Id.* at pp. 364-66. The defense objected and moved to strike the statement regarding the name but the objection was overruled by the court. *Id.* at p. 366. She then described the man who came to the door as being a skinny white male with dark hair, a balding spot, some facial hair, and a little over five feet tall. *Id.* at pp. 367-68, 381, & 383. She testified that after telling this man that no one by the name of Kenny lived there, this person went around to another side of her apartment building and went inside of a side apartment, which was later reported to be robbed. *Id.* at pp. 367-73. Meyers' mother, who was also home with Meyers on January 24, 2001, provided similar testimony to that of her daughter as to the events occurring on that date. *Id.* at pp. 402-11.

Then, during a recess, the court discussed *Ventimiglia* rulings that had been previously reserved. *Id.* at pp. 415-45. Specifically in regards to Alecia Myers' testimony along with that of her mother, the court felt that the testimony should be stricken from the record because the description provided of the man who allegedly committed the robbery on January 24, 2001, did not fit the physical characteristics of Torra. *Id.* at pp. 419-23. The court noted that Petitioner was easily six-foot three inches tall whereas the alleged perpetrator of the January 24th incident was described as close to five feet tall. *Id.* at p. 423. Notwithstanding, the court again reserved decision on

providing a jury instruction regarding *Ventimiglia* evidence and Meyers' testimony because there could still be a good faith basis for the prosecution's use of this testimony. *Id.* at pp. 429-37. The court ruled, however, that another incident of a similar crime could be inquired into by the prosecution. *Id.* at pp. 437-45.

Thereafter, Francis Leffingwell testified regarding an incident that took place in early January 2001. *Id.* at pp. 477-49. Leffingwell stated that he heard a knock on the back door of his apartment. *Id.* at pp. 479-80. He testified that he was unable to quickly get to the door and the knocking ceased. *Id.* at p. 480. However, a short time later, he heard someone "fiddling" with the lock on his back door and saw the door open. *Id.* Leffingwell stated he went to the door and saw a man on the stairs three steps up from the door, whom he identified in court to be Torra. *Id.* at pp. 480-81. Petitioner told Leffingwell he was looking for Kelly, who was the landlord of the apartment building, but Leffingwell indicated that she had moved out several months prior. *Id.* at pp. 481-82. Petitioner stated to Leffingwell that if he saw Kelly he should tell her that Petitioner had stopped by and then he left. *Id.* at p. 482. At this point, the court briefly interrupted to provide a jury instruction as to why this testimony was being permitted. *Id.* at p. 483-85. Then, on cross-examination, the defense questioned whether a burglary did occur subsequent to the occasion when someone tried to enter his apartment. *Id.* at p. 489. Leffingwell indicated that in fact his apartment was burglarized sometime in January 2001 and the police were given a statement. *Id.* at pp. 489-90. The defense then attempted to use statements made to the police on that occasion to contradict trial testimony regarding the incident when his door was opened. *Id.* at pp. 490-500.

Officer Steven Bernard of the Schenectady Police Department testified that while on patrol on January 29, 2001, he and his partner, Officer Ed Ritz, spotted Petitioner walking down a street

and attempted to apprehend him after seeing a wanted poster of him at the police station for a prior burglary.  *Id.* at pp. 518-20.  He stated that as soon as they pulled over next to Torra, he began to run, at which time they got out of their patrol car and chased him on foot.  *Id.* at pp. 521-23. Bernard testified that they split up and when Ritz had Petitioner cornered, Petitioner lowered his shoulder and ran right into Ritz.  *Id.* at pp. 522-23.  While Ritz and Petitioner struggled on the ground, Bernard stated he ran up to Petitioner and pepper sprayed him to subdue him.  *Id.* at pp. 523-24.  Then, as Petitioner was being handcuffed, he noticed that Ritz's hand was trembling.  *Id.* at p. 524.

Next, Officer Ritz testified that on January 29, 2001, after the foot chase with Petitioner began, Petitioner ran into him and they wrestled on the ground.  *Id.* at pp. 576-79.  Ritz stated that Bernard pepper sprayed Petitioner, which allowed him to handcuff Petitioner and take him into custody.  *Id.* at pp. 579-80.  Ritz testified that once Petitioner was placed into the patrol car, he noticed that his left thumb was dislocated, which was causing him a lot of pain.  *Id.* at pp. 580 & 584.  After arriving at the police station, Ritz stated that one of the Emergency Medical Technicians ("EMT") who was present at the station looked at his finger and told him to go to the hospital to get it examined.[5]  *Id.* at pp. 580-81 & 611-12.

After the conclusion of Officer Ritz's testimony, the final witness called for the prosecution was Michael Saglimbeni.  *Id.* at p. 663.  Saglimbeni testified that on January 21, 2001, Petitioner had given him a ride in a van, which was owned by Kenneth Jack.  *Id.* at pp. 664-65.  Once they arrived at Saglimbeni's destination, he stated they noticed a police vehicle slow down and drive by

---

[5] EMTs and firefighters were called to the police station as standard procedure because Petitioner had been pepper sprayed.  Trial Tr. at pp. 538 & 543.

their location, but it did not stop.  *Id.* at pp. 665-66.  Saglimbeni stated he went inside a house for a few minutes and when he returned, Petitioner was gone and nowhere to be found.  *Id.* at pp. 666-67.  Saglimbeni testified that he returned to the house and later in the day, police officers came to his location and arrested him, in part, for possession of stolen property.  *Id.* at p. 667.  He stated he was never convicted of that charge.  *Id.* at p. 668.  On cross-examination, the defense elicited testimony from Saglimbeni that he had been arrested approximately thirty times over the years for several different crimes.  *Id.* at pp. 669-70 & 674.

Subsequently, shortly before the prosecution rested, the court read a stipulation to the jury that stated, in part, that Petitioner had failed to appear for a sentencing on a DWI charge and that he had been admonished about the consequences of failing to appear.  *Id.* at pp. 679-82.  The jury was told that it could consider the matter in deciding whether the prosecution had established beyond a reasonable doubt the allegations in the indictment.  *Id.* at p. 682.  The prosecution then rested and the court proceeded to strike the testimony of Alecia Meyers and her mother, through a defense counsel request, because the prosecution had failed to make a connection between the incident occurring on January 24, 2001, and Petitioner.  *Id.* at pp. 683-84.  The court instructed the jury to disregard the testimony by the two individuals and that it should have no bearing on deliberations.  *Id.*

After the defense presented three witnesses, none of which was Petitioner, and then rested, the court discussed with counsel the charge to be provided to the jury.  *See generally id.* at pp. 685-736.  In addition to the standard charges to be given to the jury, which included a discussion on circumstantial evidence, the defense only requested a reiteration of the *Ventimiglia* charge.  *See id.* at pp. 719-36.  The defense and prosecution then gave their summations and the court charged the

jury.  *Id.* at pp. 742-822.  Thereafter, the jury found Petitioner guilty of all the charges levied against

him.  *Id.* at pp. 846-47.

Judgment was entered by the Schenectady County Court and on March 25, 2002, Torra  was

sentenced.  Judgment was affirmed on appeal to the New York Supreme Court, Appellate Division,

Third Department on October 30, 2003.  *People v. Torra*, 766 N.Y.S.2d 912 (N.Y. App. Div. 3d

Dep't 2003).  Leave to appeal to the Court of Appeals was denied on December 29, 2003.  *People v.*

*Torra,* 807 N.E.2d 910 (N.Y. Ct. of App. 2003).  This Petition followed.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may not grant *habeas* relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim –
> 1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2005); *see also Miranda v. Bennett*, 322 F.3d 171,177-8 (2d Cir. 2003);

*Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001). The AEDPA also requires that in any such

proceeding "a determination of a factual issue made by a State court shall be presumed to be correct

[and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1) (2005); *see also Boyette*, 246 F.3d at 88 (quoting 28

U.S.C. § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test,

noting that:

> Under AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)); *see generally Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006).

### B. Petitioner's Claims

### 1. Consolidation of Indictments

Petitioner claims that his Fourteenth Amendment due process rights were violated when he was tried for the crimes charged in two separate indictments.  The Appellate Division addressed the issue of the consolidation of the indictments, and found that since "evidence that defendant committed the burglary was clearly admissible to establish his motive for later resisting arrest," there was "a sufficient basis for joinder.  <u>People v. Torra</u>, 766 N.Y.S. 2d at 912.  That court also found that "defendant failed to make a convincing showing of prejudice due to County Court's consolidation of the indictment."  <u>Id</u>.

#### a. <u>Clearly Established Supreme Court Precedent</u>

In *United States v. Lane*, 474 U.S. 438, 446, n. 8, (1986), the Supreme Court stated:

> Improper jurisdiction does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.

This rule is clearly established.  See *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993); *Shand v. Miller*, 412 F. Supp.2d 267, 270 (W.D.N.Y. 2006).

*-10-*

_____       b. AEDPA Deference

As noted above, the Appellate Division addressed this issue on the merits, finding, inter alia,

that "defendant failed to make a convincing showing of prejudice due to County Court's

consolidation of the indictments."  *People v. Torra*, 766 N.Y.S. 2d at 913.  Since that court

adjudicated the claim on the merits, this court must give deference to that determination.  *Hines v.*

*Miller*, 318 F.3d 157, 160-61 (2d Cir. 2003).

c. Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent

In *Herring v. Meachum*, the Second Circuit stated: "where a defendant is claiming a due

process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for

prejudice and prove that <u>actual</u> prejudice resulted from the events as they unfolded during the joint

trial."  *Herring v. Meachum*, 11 F.3d at 377-78.  The court went on to say:

> Finally, it is appropriate that habeas petitioners challenging their state
> convictions under the general "fairness" mandate of the due process clause
> bear an onerous burden.  Because of the significant procedural protection
> provided by direct review through the state system, we will not lightly
> conclude that state court proceedings were so arbitrary as to violate due process.
> In the absence of some affirmative irregularity in the administration of the
> criminal law by the state, only in limited circumstances is habeas relief
> available under the general "fairness" mandate of the Fourteenth Amendment,
> and even then, only upon clearly defined and narrowly limited grounds.

Id. at 378-79.

The petitioner has not met this "onerous burden."  The only prejudice that petitioner claims

is that he was "precluded ... from testifying as to one indictment and exercising his right to remain

silent as to the other indictment."  Dkt. No. 1, Pet. at Supplement to Page Five; see also Dkt. No. 10,

Traverse, at 2.  He does not elaborate in any way upon this wholly conclusory statement.  Thus,

although he has established the potential for prejudice, he has not proven, or even submitted facts

showing,  that <u>actual</u> prejudice resulted.  Thus the Appellate Division's determinations that there was "a sufficient basis for joinder" and that "defendant failed to make a convincing showing of prejudice" (<u>People v. Torra</u>, 766 N.Y.S. 2d at 913), which determinations are owed deference, were not unreasonable applications of the relevant law.  This Court recommends that, with respect to the claim based upon the consolidation of indictments, the Petitioner be denied.

### 2.  Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective for: 1) stipulating to evidence relating to Petitioner's failure to appear in court for sentencing in an unrelated case that was used by the prosecution as a motive for the resisting arrest charge; 2) eliciting prejudicial testimony from a prosecution witness regarding an uncharged burglary; 3) failing to impeach a witness's credibility who had knowledge of Petitioner's extensive criminal history; 4) inducing the court to strike exculpatory testimony of a witness describing the perpetrator of an uncharged burglary; and 5) failing to request a circumstantial evidence charge as to the burglary and related counts.  Pet. at ¶ 12, Ground Two.  The Appellate Division stated that based on the totality of the circumstances, trial counsel provided meaningful representation.  *People v. Torra,* 766 N.Y.S.2d at 913.

### a. Clearly Established Supreme Court Precedent

In *Lynn v. Bliden,* 443 F.3d 238, 247 (2d Cir. 2006), the Second Circuit succinctly addressed the applicable law for an ineffective assistance claim:

> An ineffective assistance claim asserted in a habeas petition is analyzed under the "unreasonable application" clause of AEDPA because it is "past question that the rule set forth in *Strickland* qualifies as clearly established federal law, as determined by the Supreme Court of the United States." *Williams* 529 U.S. at 391 (internal quotation marks omitted); *Sellan*, 261 F.3d 110, 124 (2d Cir. 2003) (further citations omitted).

*-12-*

*Strickland* established a two prong test to determine whether counsel has been ineffective. *Strickland v. Washington*, 446 U.S. 668, 688 (1994).  As set forth in the test, a defendant must prove that, 1) counsel's representation fell below an objective standard of reasonableness under prevailing norms, and; 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694; *see Wiggins v. Smith,* 539 U.S. 510 (2003); *Aparico,* 269 F.3d at 95; *see also Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir. 2000).

A criminal defendant has a high burden to establish the deficiency of his counsel.  According to the Second Circuit:

> "The court must ...determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.  In gauging the deficiency, the court must be "highly deferential", must "consider []all the circumstances," must make "every effort ...to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...."

*Lindstadt v. Keane,* 239 F.3d 191, 198-99 (2d Cir. 2001) (quoting *Strickland, 466 U.S. at 688-89, 690) (*alterations original to Lindstadt).

As for prejudice resulting from counsel's inadequate performance:

> "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.  To merit habeas relief, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104S.Ct. 2052.  The level of prejudice the defendant need demonstrate lies between prejudice that "had some conceivable effect" and prejudice that "more likely than not altered the outcome in the case." *Id.* at 693, 104 S.Ct. 2052.  Thus "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

*-13-*

have been different." Id. at 694, 104 S.Ct. 2052.  The Court defined "reasonable probability" as one that "undermine[s] confidence in the outcome." *Id.*

### b. AEDPA Deference

As noted above, the Appellate Division addressed this issue on the merits, finding that Petitioner "failed 'to demonstrate the absence of strategic or other legitimate explanations'" for counsel's alleged trial errors, and concluding that Petitioner "received meaningful representation." *People v. Torra*, 766 N.Y.S. 2d at 913.  Since that court adjudicated the claim on the merits, this Court must give deference to those determinations.  *Hines v. Miller*, 318 F.3d 157, 160-61 (2d Cir. 2003).

### c. Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent

**(1.) Stipulation**

Petitioner asserts that his trial counsel erred by stipulating to evidence relating to his failure to appear at a sentencing for a DWI charge when it was "inconsistant [sic] with the theory advanced in support of the prosecution["]s motion to consolidate the indictments[.]" Pet. at ¶ 12, Ground Two.

The Second Circuit has held that "[a]s a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation."  *United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland v. Washington,* 466 U.S. at 690-91 & citing *United States v. Berkovich,* 168 F.3d 64, 67-68 (2d Cir. 1999) (finding that trial counsel's decision to enter into a global stipulation was "reasonable trial strategy"); & *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997) (for the proposition that identifying "what evidence should be introduced, what stipulations should be

*-14-*

made, what objections should be raised, and what pre-trial motions should be filed" primarily involved

trial strategy).

In this case trial counsel's decision to stipulate to the fact that Petitioner failed to appear for his

sentencing on a DWI charge could be viewed as trial strategy.  There were many instances of charged

and uncharged crimes the prosecution sought to introduce during the trial to discredit Petitioner.  For

example, several people testified as to other burglaries Petitioner may have committed.  *See* Trial Tr. at

pp. 364-411.  Instead of allowing drawn out testimony regarding the failure to appear, counsel's

decision to stipulate to the facts may have avoided further scrutiny into Petitioner's criminal history.

Trial counsel's representation was not objectively unreasonable under the circumstances, and even had

the stipulation been erroneously entered into, it is not a reasonable probability that, but for counsel's

alleged unprofessional performance, the outcome of the proceeding would have been different.

**(2.)   Prejudicial Testimony**

Petitioner claims that counsel was ineffective for eliciting from Leffingwell that a burglary had

in fact occurred some time after Petitioner allegedly tried to enter his home. Pet. at ¶ 12, Ground Two.

In this case, the jury was already cognizant from the prosecution's direct examination of Leffingwell

that some type of burglary occurred.  *See* Trial Tr. at pp. 477-85.  In fact, the trial court provided a jury

instruction regarding the use of Leffingwell's testimony based on that account.  *Id.* at pp. 483-85.

During cross-examination, the defense briefly discussed when the actual burglary occurred because the

defense sought to impeach Leffingwell's credibility using a police statement made in regards to that

burglary.  *Id.* at pp. 489-500.  The defense desired to show that statements made to the police on that

occasion contradicted the testimony given at trial as to how Petitioner allegedly tried to enter

Leffingwell's apartment.  *Id.* It was clearly a tactical decision to approach the witness's testimony in

this fashion.  Thus, trial counsel's representation was not objectively unreasonable.  Furthermore, since

the court had already admonished the jury as to how they should consider the testimony, there was no

resulting prejudice.

### (3.) Impeaching Witness Credibility

Petitioner asserts that trial counsel failed to properly impeach the credibility of Saglimbeni by

probing further into his criminal history.  Pet. at ¶ 12, Ground Two.

As the Second Circuit has stated, "[d]ecisions about 'whether to engage in cross-examination,

and if so to what extent and in what manner, are ... strategic in nature' and generally will not support

an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)(quoting *United*

*States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987)).  Here, the defense elicited that Saglimbeni

had been arrested more than thirty times and for several different crimes.  *See* Trial Tr. at pp. 669-70 &

674.  Although defense counsel did not question this witness in detail as to every crime and conviction,

the jury was made aware of Saglimbeni's extensive criminal history and, therefore, could judge his

credibility accordingly.  Defense counsel's choice not to spend an inordinate amount of time on the

criminal history could well have been for strategic reasons.  Based on the record, trial counsel's

representation was not objectively unreasonable and Petitioner was not prejudiced since the jury was

aware of the witness's history.

### (4.) Striking Exculpatory Testimony

Petitioner alleges that trial counsel was ineffective for striking the testimony of Alecia Meyers

and her mother because it supported a defense of misidentification.  Pet.at ¶ 12, Ground Two.

However, despite Petitioner's claim, it was beneficial for him that the testimony be stricken.  The

prosecution was attempting to show that Petitioner had committed other burglaries in a short time span

to the one charged in this case.  *See* Trial Tr. at pp. 364-411.  Nevertheless, the court held that in regard

to Meyers' and her mother's testimony, the prosecution had failed to make a connection between

Petitioner and the person who may have committed the January 24, 2001 burglary.  *Id*. at pp. 683-84.

Had the jury been able to consider that burglary, despite the fact that the description of the person who

committed the burglary on January 24 was not identical to Petitioner, they may have nonetheless

attributed the crime to Petitioner considering people can change their appearances over time.  With the

testimony being stricken, the jury was able to hear from the court that Petitioner was not connected to

that crime.  *Id.*  The less the jury had to consider about Petitioner's criminal history or propensity for

such crimes, the more beneficial it would be for Petitioner.  Based on the circumstances, trial counsel's

representation was not objectively unreasonable and Petitioner was not prejudiced by any alleged error.

**(5.)  Circumstantial Evidence Charge**

Finally, Petitioner claims that trial counsel erred by failing to ask the court to provide the jury

with a circumstantial evidence charge.  Pet. at ¶12, Ground Two.  In this case, it is abundantly clear

that counsel's representation was not objectively unreasonable.  During the charge conference, the

court had mentioned it would provide a circumstantial evidence charge to the jury.  *See* Trial Tr. at pp.

719-36.  In such a case, there was no need for counsel to request the charge.  Furthermore, the court

gave a direct and circumstantial evidence charge to the jury prior to deliberations.  *Id.* at pp. 797-99.

Thus, there was no constitutional violation and no prejudice befell Petitioner since the charge was

presented to the jury.

Based on the record, trial counsel effectively represented Petitioner and the Appellate

Division's determination that Petitioner received meaningful representation was not contrary to, nor an

unreasonable application of, clearly established federal law.  Accordingly, it is recommended that the

*-17-*

Petition be **denied** on the ground of ineffective assistance of counsel.

### 3. *Sandoval* Ruling

Petitioner asserts that the trial court's ruling that followed a *Sandoval* hearing permitting the prosecution to cross-examine him on prior felony charges that were dismissed in satisfaction of guilty pleas to other charges deprived him of a fair trial.  Pet. at ¶ 12, Ground Three.  The Appellate Division held that the trial court committed no error in allowing an inquiry of charges dismissed in satisfaction of other charges.  *People v. Torra*, 766 N.Y.S.2d at 913.

_____          In *People v. Sandoval*, 34 N.Y.2d 371, 374 (1974), , the court stated that

> 'the rules governing the admissibility of evidence of other crimes represent a balance
> between the probative value of such proof and the danger of prejudice which it presents
> to an accused.  When evidence of other crimes has no purpose other than to show that
> a defendant is of a criminal bent or character and thus likely to have committed the
> crime charged, it should be excluded.'  Thus, a balance must here be struck between the
> probative worth of evidence of prior specific criminal, vicious or immoral acts on the
> issue of the defendant's credibility on the one hand, and on the other the risk of unfair
> prejudice to the defendant, measured both by the impact of such evidence if it is
> admitted after his testimony and by the effect its probable introduction may have in
> discouraging him from taking the stand on his own behalf.

*Sandoval*, 34 N.Y.2d at 375.  A "trial judge is given broad discretion to determine what evidence should be admissible in balancing the interest of the People in impeaching the defendant's testimony with the risk of unfairly prejudicing the defendant."  *Nieves-Delgado v. New York*, 2003 WL 21310815, at *3 (S.D.N.Y. June 9, 2003) (citing *Domingo v. Greiner*, 2002 WL 362761 (S.D.N.Y. March 5, 2002) & *People v. Walker*, 633 N.E.2d 472 (N.Y. Ct. of App. 1994)).

In this *habeas* application, Petitioner is faced with a fatal threshold issue with respect to his *Sandoval* claim: he did not testify at trial, and *habeas* relief is barred "for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not [to] testify."  *Shannon v. Senkowski*, 2000 WL

*-18-*

1683448, at *6; *Luce v. United States,* 469 U.S. 38, 43 (1984).  It is established that

> 'a petitioner's failure to testify at trial is fatal to any claims of constitutional
> deprivation arising out of a *Sandoval*-type ruling ....The Reason that a
> *habeas* petitioner's failure to testify at trial is 'fatal to any claims arising
> out of a *Sandoval* type ruling' is that absent such testimony, a court has
> 'no adequate non-speculative basis upon which to assess the merits of
> that claim'.'

*Shannon v. Senkowski, 2000 WL 1683448, at *6(*citing *McEachin v. Ross,* 951 F. Supp. 478, 481

(S.D.N.Y. 1997)(quoting *Peterson v. LeFevre*, 753 F. Supp. 518, 521 (S.D.N.Y. 1991) *aff'd mem.,* 940

F.2d 649 (2d Cir. 1991)(further citations omitted)); see also *Williams v. Dufrain*, 2002 WL 975304, at

*7 (N.D.N.Y Apr. 19, 2002).  Therefore it is recommended that with respect to the claim based upon

the *Sandoval* ruling, the Petition be denied.

### 4.  Sufficiency of the Evidence

In his appeal to the Appellate Division, Petitioner claimed, as he does here in his *habeas*

Petition, that there was legally insufficient evidence to support his conviction on the assault count.

Pet. at ¶ 12, Ground Four.  The Appellate Division addressed his claim, and rejected it.  *People v.

Torra*, 766 N.Y.S. 2d at 913. In addition, however, here, as opposed to the Appellate Division,

Petitioner makes a one sentence wholly conclusory claim that apparently questions the legal

sufficiency of the evidence to support <u>any</u> of his convictions.  Pet. at ¶ 12, Ground Four.

a.  <u>The Assault Count</u>

**(1.) <u>Clearly Established Supreme Court Precedent</u>**

A *habeas* petitioner claiming that there was insufficient evidence supporting his conviction is

entitled to relief under 28 U.S.C. §2254 "if it is found that upon the record evidence adduced at the

trial no rational trier of act could have found proof of guilt beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 327 (1979).

**(2.) AEDPA Deference**

The Appellate Division found that "the testimony was legally sufficient to support defendant's assault conviction." *People v. Torra*, 766 N.Y.S. 2d at 913. Since that court adjudicated the claim on the merits, this Court must give deference to that determination. *Hines v. Miller*, 318 F.3d 157, 160-61 (2d Cir. 2003).

**(3.) Contrary to, or Unreasonable Application of,  Relevant Supreme Court Precedent**

As the Supreme Court stated in *Herrera v. Collins*, 506 U.S. 390, 402 (1993), "the *Jackson* inquiry does not focus on whether the trier of fact made the <u>correct</u> guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  Furthermore, the reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor.  *Jackson v. Virginia,* 443 U.S. at 319.  A federal *habeas* court must look to state law to determine the elements of a crime when considering a challenge based upon the sufficiency of evidence.  See *id*, at 324; *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).

Petitioner's insufficiency argument on his assault conviction goes to the physical injury element of that charge, i.e., the injury to Officer Ritz's left thumb that occurred when Petitioner was trying to avoid arrest.  Petitioner argues that the evidence showed "minimal impairment," and that there was "no evidence of an actual dislocation," and that Officer Ritz was not prevented "from working or performing daily living tasks."  Pet. at ¶12(D).

According to New York law, a person is guilty of assault in the second degree when "[w]ith intent to prevent a . . .police officer. . .from performing a lawful duty,. . . he causes physical injury to such. . .police officer[.]" N.Y. PENAL LAW § 120.05(3).  A physical injury is an "impairment of

*-20-*

physical condition or substantial pain." *Id.* at § 10.00(9).

In this case, there was testimony at trial that in the course of attempting to arrest Petitioner for the January 18, 2001 burglary charge, Petitioner tried to evade police capture and "dropped his shoulder and ran into" Officer Ritz.  *See* Trial Tr. at pp. 518-24 & 576-80. They wrestled on the ground until Petitioner was subdued with pepper spray, and, while returning to the police station, Officer Ritz noticed he had dislocated his left thumb, which was causing him pain.  *Id.* at pp. 580 & 584.  Upon arriving at the station, Ritz had his finger examined by an EMT, who testified that Ritz's "thumb was moved out of its anatomical position.  It was not where it belonged." *Id*. at p. 611.  The EMT further testified that he told Officer Ritz that "he needed to be seen by a medical professional at a hospital for an x-ray and possibly a cast." *Id.* at 612.  The Officer went to the hospital, where the thumb was x-rayed.  He felt pain for about a week. *Id*. at p. 583.

Thus, considering the evidence in the light most favorable to the prosecution, and drawing all inferences in its favor, rational triers of fact clearly could have found beyond a reasonable doubt that Petitioner "cause[d] physical injury" to Officer Ritz.  Therefore, the Appellate Division's determination was not contrary to, nor an unreasonable application of, clearly established federal law, and I recommend that the Petition be denied with respect to this claim.

b.  The Remaining Counts

As noted above, Petitioner makes a one sentence wholly conclusory claim that apparently questions the legal sufficiency of the evidence to support any of his convictions. Pet. at ¶12, Ground Four. This claim was not presented to the Appellate Division.  See Def's Appellate Brief.

**(1.) Exhaustion**

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or

demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect the petitioner's right. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)(quoting 28 U.S.C.§2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118 (1995). This exhaustion requirement is satisfied if the claim has been "fairly presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)(quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982)(en banc); *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). Finally, *habeas corpus* petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Cruz v. Artuz,* Civil No. 97-2508, 2002 WL 1359386, at *8 (E.D.N.Y June 24, 2002)(citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998); *United States ex rel. Cuomo v. Fay*, 257 F.2d 438, 442 (2d Cir. 1958)); *see also Ruine v. Walsh*, Civ. No. 00-3798, 2002 WL 1349713, at *2(S.D.N.Y. June 19, 2002)(citing *Colon,* 19 F. Supp.2d at 119-20)).

Here, as previously noted, Petitioner's apparent challenge to the legal sufficiency of the evidence supporting his conviction beyond the assault conviction was not presented to the Appellate Division. Accordingly, this claim has not been exhausted.

**(2.) Unexhausted Claims Which May Be Deemed Exhausted**

When a claim has not been fairly presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."*Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.2d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124(2d

Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).  Therefore, this Court must determine whether it would be futile for Petitioner now to present his sufficiency of the evidence claim to the state courts.

Since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *Aparicio*, 269 F.3d at 91 (citing N.Y.C.P.L § 440.10(2)(c)), Petitioner could not now properly raise this claim in a motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994( *cert. denied*, 514 U.S. 1054 (1995).  Therefore, this claim is "deemed exhausted" for purposes of Petitioner's *habeas* application.  *Spence v. Superintendent*, *Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, Civ. No. 00-5673, 2002 WL 31102612, at *10(E.D.N.Y. Sept. 18, 2002), However, although these claims are "deemed exhausted," they also are procedurally barred.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 711 at 735 n.1).

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.  *See St. Helen v. Senkowski*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent'")(quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998))(citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to either comply with the relevant procedural rule or fully exhaust his federal claims.  *See*

*Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)).  *See also Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, Civ. No. 97-5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004)(citing *Murray*, 477 U.S. at 488).

Here Petitioner has not even asserted a claim of cause for his failure to exhaust.  As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal *habeas* relief is unavailable as to procedurally barred claims unless **both** cause and prejudice are established.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *McLeod v. Moscicki,* Civ. No. 02-9335, 2003 WL 22427757, at *8(S.D.N.Y. Oct. 22, 2003)(citing *Murray*, 477 U.S. at 494); *You v. Bennett*, Civ. No. 00-7514, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003)(citing *Coleman*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9(S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997)(Kahn, J.).

Finally, this Court finds no basis to conclude that the denial of Petitioner's procedurally barred claim would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623

(internal quotation marks and citations omitted).  Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.*

In this proceeding Petitioner has not claimed actual innocence (*Bousley*, 523 U.S. at 623), and there is no basis in the record for concluding that it is probable "that no reasonable juror would have convicted him."

Since Petitioner has procedurally defaulted on his apparent challenge to the legal sufficiency of the evidence supporting his convictions beyond the assault conviction, and has failed to establish either cause for that default or that he is actually innocent, this Court recommends that this claim be denied as procedurally barred.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED** and **DISMISSED**.  Furthermore, the undersigned finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  Therefore, I recommend that no certificate of appealability should issue with respect to any of Petitioner's claims; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P.

72, 6(a), & 6(e).


Date:   March 21, 2008
        Syracuse, New York

George H. Lowe
United States Magistrate Judge